785 So.2d 633 (2001)
Pedro A. SOSA-VALDEZ, and Roberto Barrios, Appellants,
v.
The STATE of Florida, Appellee.
Nos. 3D99-1501, 3D99-1502.
District Court of Appeal of Florida, Third District.
May 2, 2001.
Rehearing Denied June 6, 2001.
Bennett H. Brummer, Public Defender, and Louis K. Nicholas, II, Special Assistant Public Defender, for appellant, Pedro A. Sosa-Valdez; Joel D. Robrish, and Arthur Joel Berger, for appellant, Roberto Barrios.
Robert A. Butterworth, Attorney General, and Frank J. Ingrassia, and Steven R. Berger, Assistant Attorneys General, for appellee.
Before GERSTEN, and RAMIREZ, JJ., and NESBITT, Senior Judge.
RAMIREZ, J.
Pedro A. Sosa-Valdez and Roberto Barrios appeal their convictions for armed robbery, carjacking, kidnaping, and burglary. Because the State called the lead detective on rebuttal and elicited impermissible opinion testimony based on hearsay, we reverse the convictions and remand for a new trial.
At trial, the defendants' theory of defense was that the entire incident had been staged to allow the participants to keep a substantial amount of money for themselves by pretending that the funds had been stolen from the alleged victim, Ruben Lagru. Lagru, who owns a business that exports computer parts, was given $25,000 in cash by a foreign customer. He testified that he placed the money on the front passenger seat of his car as he was leaving work at 9:00 p.m. While driving home, he called his wife on his cell phone. Three or four minutes later, a van struck his car from behind. While still on the phone with his wife, he got out to assess the damage. Barrios then put a gun to his head and forced Lagru into the trunk of Lagru's car without searching the trunk. Lagru had two firearms in the trunk and was proficient in their use. The defendants took Lagru's phone away, closed the trunk lid and drove to a nearby parking lot in Lagru's car.
After the car stopped, the two men asked Lagru if he had a gun. He denied having one. When they opened the trunk, *634 Lagru did not use the guns. Instead, he remained lying in the trunk on top of the guns while Barrios rummaged through the trunk. Finding only gym clothes, the defendants took Lagru's wallet and told him that they were going to leave the trunk lid open, with the keys inserted in the trunk lid, and that he was to remain inside for five minutes.
After Lagru got out of the trunk, he noticed that the $25,000 was missing, as well as the papers for the car, a pair of keys to Lagru's office and home, two pairs of sunglasses and a T-shirt. He found his cell phone on the back seat of the car. He first called his wife to tell her he was all right and that the keys were missing, but he could not recall telling her that he had been robbed. He did not ask her to call the police. Lagru then called his business partner, and, finally, he called the police. Lagru's business partner, along with Lagru's accountant, arrived on the scene before the police.
At first, Lagru told the police that only $300 had been stolen. He waited twelve days to report the missing $25,000. Sosa-Valdez's and Barrios' fingerprints were found on Lagru's car. They were arrested after Lagru identified them both from a photographic lineup prepared by the lead investigator, Detective Hladky.
At trial, both defendants testified that the incident had been orchestrated by Lagru. Sosa-Valdez was impeached by his prior inconsistent statements. After the defense rested, the State called Detective Hladky on rebuttal. The State proffered that he would testify about his investigation, including the witnesses he interviewed before the arrest, and he would opine, based on his investigation, whether or not Lagru set up the whole incident as alleged by the defendants. The defense objected and the trial court responded, "[h]e's not going to say that." Unfortunately, that is precisely what Detective Hladky did when the trial court permitted the rebuttal testimony.
After telling the jury about his experience as an officer and detective, Detective Hladky explained that he was the lead detective in the case. He described Sosa-Valdez's statement that Lagru set up the whole thing, then stated that this was the first time in his three-and-a-half-month investigation, including interviews with numerous witnesses, that he had heard anything about this being a staged robbery. A hearsay objection was overruled. Detective Hladky was then allowed to testify that, based on his investigation during those three-and-a-half months, the information he received from the witnesses, and his training and experience as a police officer, Lagru was not involved in a setup.
In Martinez v. State, 761 So.2d 1074 (Fla.2000), the Florida Supreme Court recently reversed a murder conviction because the lead investigator was allowed to testify that he had no doubt that the defendant murdered the victim. The court reiterated the basic proposition that a witness' opinion as to the guilt or innocence of the accused in a criminal case is not admissible. It explained that "such testimony is precluded on the authority of section 90.403, Florida Statutes (1997), which excludes relevant evidence on the grounds that its probative value is substantially outweighed by unfair prejudice to the defendant." Id. at 1079. Because the questions to Detective Hladky included references to his interviews with other witnesses, the next quotation from the Martinez case is particularly pertinent:
Further, there is an increased danger of prejudice when the investigating officer is allowed to express his or her opinion about the defendant's guilt. In this situation, an opinion about the ultimate issue of guilt could convey the *635 impression that evidence not presented to the jury, but known to the investigating officer, supports the charges against the defendant.
Id. at 1080. The court relied on United States v. Young, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), in which the United States Supreme Court explained that "such comments can convey the impression that evidence not presented to the jury, but known to the prosecution, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury." Young at 18-19, 105 S.Ct. 1038. The Martinez court, quoting from Rodriguez v. State, 609 So.2d 493 (Fla.1992), expressed concern that testimony by a police officer as a corroborating witness, exacerbates the error of admitting improper testimony. The Rodriguez court cautioned that "`[w]hen a police officer, who is generally regarded by the jury as disinterested and objective and therefore highly credible, is the corroborating witness, the danger of improperly influencing the jury becomes particularly grave.'" Id. at 500 (quoting Carroll v. State, 497 So.2d 253, 257 (Fla. 3d DCA 1985)).
The remarks by Detective Hladky came in rebuttal, the last testimony the jury heard in the case. The fact that Detective Hladky did not directly state, "I think the defendants are guilty," is a distinction without a difference. The entire defense was predicated on the theory that Lagru had staged his own robbery. By testifying that Lagru was not involved in some sort of set up, the officer was in effect saying that the defendants were guilty.
Nor can the error be excused as harmless. During deliberation, the jury asked four questions which indicated their concerns: "[(1)] What happened to the money? [(2)] [W]hy wasn't Silvana [Lagru's secretary] a witness, also the accountant? [(3)] Why didn't [Detective Hladky] ask to see the invoices, ... receipts or records dealing with the $25,000? [(4)] [D]id anyone try to get a written statement from the Lagru customer that he had actually given Lagru $25,000?" These questions belie the State's assertions of overwhelming evidence of guilt. Instead, they indicate a jury not totally convinced by the State's case. Under these circumstances, the erroneous admission of Detective Hladky's opinion about the defendants' guilt might very well have swayed the jury to return the guilty verdicts. Thus, the State has not met its burden of proving beyond a reasonable doubt that the error complained of did not contribute to the verdict. See State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986).
For these reasons, we reverse and remand for a new trial.